Evan J. Smith
BRODSKY & SMITH, LLC
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAIN LINE CAPITAL INVESTMENTS, LLC,<br><br>                    Plaintiff,<br><br>          vs.<br><br>MOBILE MINI, INC., ERIK OLSSON, FREDERICK G. McNAMEE, JEFFREY S. GOBLE, JAMES J. MARTELL, KIMBERLY J. McWATERS, LAWRENCE TRACHTENBERG, MICHAEL L. WATTS, SARA R. DIAL, STEPHEN A. McCONNELL, MICHAEL W. UPCHURCH, KELLY WILLIAMS, WILLSCOT CORPORATION, and PICASSO MERGER SUB, INC.,<br><br>                    Defendants. | Case No.:<br><br>COMPLAINT FOR:<br>(1)  Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br><br>DEMAND FOR JURY TRIAL |

Plaintiff Main Line Capital Investments, LLC ("Plaintiff"), by its attorneys, files this action against the defendants and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this action on behalf of itself as a stockholder of Mobile Mini, Inc. ("Mobile Mini" or the "Company") against Mobile Mini and Mobile Mini's Board of Directors (the "Board" or the "Individual Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), related to the Individual Defendants' efforts to sell the Company to WillScot Corporation, through its wholly-owned subsidiary Picasso Merger Sub, Inc. ("Merger Sub," and with WillScot Corporation, "WillScot")(collectively with Mobile Mini and the Individual Defendants, the "Defendants").  Plaintiff challenges and seeks to enjoin an upcoming stockholder vote on a proposed transaction by which WillScot will acquire each issued and outstanding share of Mobile Mini (the "Proposed Transaction" or "Merger") without proper disclosure of, or material misleading disclosure of, facts relevant to the Proposed Transaction.

2.      Mobile Mini and WillScot entered into the merger agreement underlying the Proposed Transaction on March 2, 2020.  Thereafter, on May 6, 2020, Mobile Mini filed a Definitive Proxy Statement on Schedule DEFM14A (the "Proxy") with the SEC in support of the Proposed Transaction.

3.      In violation of Sections 14(a) and 20(a) of the Exchange Act, defendants caused to be filed the materially deficient Proxy on May 6, 2020 with SEC in an effort to solicit stockholders, including Plaintiff, to vote their Mobile Mini shares in favor of the Proposed Transaction.  The Proxy is materially deficient, deprives Plaintiff of the information it needs to make an intelligent, informed and rational decision of whether to vote its shares in favor of the Proposed Transaction. As detailed below, the Preliminary Proxy omits and/or misrepresents material information concerning, among other things: (a) the sales process and certain conflicts of interest for

2

management; (b) the financial projections for Mobile Mini and WillScot provided by Mobile Mini and WillScot to Mobile Mini's financial advisors Barclays Capital, Inc. ("Barclays") and Goldman Sachs & Co., LLC ("Goldman Sachs"), as well as to WillScot's financial advisors Morgan Stanley & Co. LLC ("Morgan Stanley") and Stifel, Nicolaus, & Co., Inc. ("Stifel") for use in its financial analyses; and (c) the data and inputs underlying the financial valuation analyses that purport to support the fairness opinion provided by the Company's and WillScot's financial advisors.

4. Absent judicial intervention, the Merger vote will occur without Plaintiff being properly informed of relevant information material to its decision on how to cast its vote. Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly disclose material information, and to recover damages resulting from violations of federal securities laws by Defendants.

5. Plaintiff alleges that it is entitled to enjoin the Proposed Transaction or, alternatively, to recover damages in the event that the Proposed Transaction is consummated.

**THE PARTIES**

6. Plaintiff Main Line Capital Investments, LLC is and has been a stockholder of Mobile Mini during all relevant times hereto.

7. Defendant Mobile Mini is a Delaware corporation that maintains its principal place of business at 4646 E. Van Buren Street, Suite #400, Phoenix, AZ 85008. Mobile Mini, together with its subsidiaries, provides portable storage and specialty containment solutions in the United States, the United Kingdom, and Canada. The Company trades on the NasdaqGS under the symbol "MINI."

10. Defendant Erik Olsson ("Olsson") has served on the Board of Company at all relevant times. Olsson also serves as the Chairman of the Board.

11.     Defendant Frederick G. McNamee ("McNamee") has been a Director of the Company at all relevant times. McNamee also serves on the Board's Audit and Nominating & Corporate Governance Committees.

12.     Defendant Jeffrey S. Goble ("Goble") has been a Director of the Company at all relevant times. Goble also serves on the Board's Compensation and Nominating & Corporate Governance Committees.

13.     Defendant James J. Martell ("Martell") has been a Director of the Company at all relevant times. Martell also serves as the Chair of the Board's Nominating & Corporate Governance Committee and on the Board's Compensation and Audit Committees.

14.     Defendant Kimberly J. McWaters ("McWaters") has been a Director of the Company at all relevant times. McWaters also serves on the Board's Compensation and Audit Committees.

15.     Defendant Lawrence Trachtenberg ("Trachtenberg") has been a Director of the Company at all relevant times. Trachtenberg also serves as the Chair of the Board's Compensation Committee and on the Board's Audit Committee.  Trachtenberg is also classified as a "Financial Expert" by the Company.

16.     Defendant Michael L. Watts ("Watts") has been a Director of the Company at all relevant times. Watts also serves on the Board's Compensation Committee.

17.     Defendant Sara R. Dial ("Dial") has been a Director of the Company at all relevant times. Dial also serves as the Chair of the Board's Compensation Committee and on the Board's Nominating & Corporate Governance Committee.

18.     Defendant Stephen A. McConnell ("McConnell") has been a Director of the Company at all relevant times. McConnell also serves on the Board's Nominating & Corporate

Governance and Audit Committees.  McConnell is also classified as a "Financial Expert" by the Company.

19.     Michael W. Upchurch ("Upchurch") has been a Director of the Company at all relevant times. Upchurch also serves on the Board's Audit Committee.  Upchurch is also classified as a "Financial Expert" by the Company.

20.     Kelly Williams ("Williams") has been a Director of the Company at all relevant times.  In addition, Williams serves as the Company's Chief Executive Officer ("CEO").

21.     The Individual Defendants in paragraphs 10-21 are, and at all times relevant hereto have been, directors of Mobile Mini.

22.     Each Individual Defendant herein is sued individually, as a conspirator and aider and abettor, as well as in their capacity as an officer and/or director of the Company, and the liability of each arises from the fact that they have engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

23.     Defendant WillScot Corporation is a Delaware corporation that maintains its principal place of business at 901 S. Bond Street, Suite 600, Baltimore, MD 21231.  WillScot together with its subsidiaries, provides various modular space and portable storage solutions in the United States, Canada, and Mexico.  The Company trades on the NasdaqCM under the symbol "WSC."

24.     Defendant Merger Sub is a Delaware corporation and a wholly-owned subsidiary of WillScot.

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

26.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

27.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the alleged wrongs took place in this District and the Company's common stock trades on the NASDAQ Composite, which is headquartered in this District.

**SUBSTANTIVE ALLEGATIONS**

*Company Background*

28.     Mobile Mini together with its subsidiaries, provides portable storage and specialty containment solutions in the United States, the United Kingdom, and Canada.

29.     The Company operates through three segments: Storage Solutions North America, Storage Solutions United Kingdom, and Tank & Pump Solutions. The Company offers various portable storage and office products, including steel storage containers and steel ground level offices to construction companies, retailers, medical centers, schools, utilities, distributors, military, hotels, restaurants, entertainment complexes, and households for various applications, such as storage of construction materials and equipment, retail and manufacturing inventory, documents and records, and other goods.

30.     Mobile Mini also provides a range of specialty containment equipment, such as steel tanks, stainless steel tank trailers, and pumps and filtration equipment, as well as roll-off, vacuum, and dewatering boxes.

31.     In addition, the Company offers specialty containment services comprising transportation of containers for waste management; waste management oversight and services; system design services, including pumping assessment, filtration, and temporary storage; and field services to install and connect customer containment equipment. The Company primarily leases its specialty products for chemical, refinery, oil and natural gas drilling, mining, and environmental service customers.

32.     As of December 31, 2019, the Company operated a rental fleet of approximately 200,200 storage solution containers and units; and 12,700 units of tank and pump solutions. Its network also consisted of 120 storage solutions locations, 20 tank and pump solutions locations and 16 combined locations.

### The Proposed Transaction

33.     On March 2, 2020, Mobile Mini and WillScot announced the Proposed Transaction. The press release states in relevant part as follows:

> **BALTIMORE & PHOENIX (March 2, 2020)** – WillScot Corporation (NASDAQ: WSC) ("WillScot") and Mobile Mini, Inc. (NASDAQ: MINI) today announced the companies have entered into a definitive merger agreement under which WillScot, a leading specialty rental services provider of innovative modular space and portable storage solutions across North America, will combine with Mobile Mini, a leading provider of portable storage solutions serving customers in the U.S., U.K., and Canada. Mobile Mini stockholders will receive 2.4050 shares of WillScot common stock for each share of Mobile Mini common stock in an all-stock merger of equals transaction.
>
> The implied total enterprise value of the combined company is approximately $6.6 billion. Upon completion of the transaction, current WillScot and Mobile Mini stockholders will own 54% and 46% of the combined company, respectively. The transaction is expected to close in the third quarter of 2020.
>
> This combination brings together WillScot's leading modular space capabilities with Mobile Mini's leading portable storage solutions. The combined company will benefit from complementary capabilities, a diverse customer base, a broad geographic footprint, increased scale, and multiple levers for growth driven by enhanced product and service offerings as well as significant cost savings.

7

Brad Soultz, President and Chief Executive Officer of WillScot, commented, "today's announcement represents a milestone event for both WillScot and Mobile Mini. The combination of our two great companies creates a leading provider of modular space and portable storage solutions, with a broadened footprint and expanded fleet ideally positioned to benefit from the cross-selling of WillScot's Ready to Work solutions and Mobile Mini's managed services offerings. The combined company will benefit from diversified and predictable lease revenue streams, as well as a strong balance sheet and robust free cash flow profile, facilitating further growth and enhancing our ability to generate superior returns for our stockholders. I am very excited to combine with Mobile Mini and could not be prouder of the WillScot team that made it possible."

Kelly Williams, President and Chief Executive Officer of Mobile Mini, said, "We are pleased to join forces with WillScot to offer customers the largest portfolio of modular space and portable storage solutions in North America. We look forward to working with the WillScot team to successfully integrate our great businesses and deliver strong, predicable growth and profitability to stockholders over the long term, all while maintaining our commitment to our culture and focus on customer service."

Compelling Strategic Rationale

- Combines two iconic industry leaders – a leading provider of modular space solutions and a leading provider of portable storage solutions – with best-in class teams and proven track records of delivering profitable growth and stockholder value.

- Creates industry-leading specialty leasing platform with enhanced ability to serve customers through a combination of distinct but complementary portfolios with leading brands and broad geographic footprint.

- $50 million of anticipated annual cost synergies for this transaction with significant upside for incremental revenue synergies supported by cross-customer pull through, expansion of WillScot's value adding products and services offering across Mobile Mini's steel ground level offices, and expansion of Mobile Mini's managed services offering across WillScot's customer base.

- Strengthens combined customer valuation proposition across diverse end markets via pull through from modular to storage and vice versa.

- Significant capital allocation flexibility underpinned by an expected combined free cash flow2 of greater than $290 million and supported by a $2.9 billion NBV fleet generating predictable and strong recurring revenue with >30 months average lease duration and >20 years average useful asset life.

- Builds on WillScot's track record of successfully integrating the ModSpace, Tyson and Acton acquisitions, while driving over $70 million of annual cost synergies.

Organizational Structure

Following the close of the transaction, Brad Soultz, WillScot's Chief Executive Officer, will serve as Chief Executive Officer of the combined company, Kelly Williams, Mobile Mini's President and Chief Executive Officer, will serve as President and Chief Operating Officer of the combined company, Tim Boswell, WillScot's Chief Financial Officer, will serve as Chief Financial Officer of the combined company and Chris Miner, Mobile Mini's General Counsel, will serve as General Counsel of the combined company.

The combined company's board of directors will consist of 11 directors, 6 of which are members from the WillScot Board of Directors and 5 of which are members from the Mobile Mini Board of Directors. Erik Olsson, the Non-Executive Chairman of the Board of Directors of Mobile Mini, will serve as Non-Executive Chairman of, and Gerry Holthaus, Non-Executive Chairman of the Board of Directors at WillScot, will serve as Lead Independent Director of, the board of directors of the combined company.

Combination Overview and Financial Rationale

Mobile Mini stockholders will receive 2.405 shares of WillScot common stock for each share of Mobile Mini common stock held and, based on the closing price of WillScot's Class A common stock on February 28, 2020, the consideration implies a premium of 8% to the closing price of Mobile Mini common stock on the same day. As part of the transaction, TDR Capital will exchange all of its shares of Williams Scotsman Holdings Corp. into approximately 10.6 million shares of WillScot Class A common stock pursuant to the Exchange Agreement dated November 29, 2017 among WillScot, Williams Scotsman Holdings Corp. and affiliates of TDR Capital, and all shares of WillScot's Class B Common Stock will be cancelled for no consideration. Upon the effective time of the merger, the combined company will have a single class of common stock.

This combination is expected to result in an estimated enterprise value for the combined company at announcement of $6.6 billion, $1.7 billion in combined 2019 revenue and ~$650 million in combined 2019 Adjusted EBITDA1, including an estimated $50 million of cost synergies from this transaction. With over $290 million of annual free cash flow generation and net leverage of 3.8x3 Adjusted EBITDA1 at close, this transaction demonstrates the combined company's financial strength, significant liquidity, and cash flow generation to provide for ongoing growth and stockholder value creation.

Additionally, the management teams anticipate $50 million in annualized gross pre-tax cost synergies, approximately 80% of which are expected to be realized in the combined company's run-rate within two years of closing. The cost of achieving the synergies is expected to be approximately 150% of the total cost synergies. Significant opportunities for long-term revenue synergy generation are also anticipated, supported by a broad expansion of service offerings. The transaction is expected to be highly accretive with greater than 10% free cash flow per share accretion by end of 2021.

The transaction has been approved by the Boards of Directors of WillScot and Mobile Mini. The transaction is subject to customary closing conditions, including receipt of customary antitrust approval and approval by the stockholders of each company, and is expected to close in third quarter of 2020. Additionally, the transaction also has the support of TDR Capital, which has entered into a customary voting agreement in support of the transaction. TDR Capital will be subject to a contractual lock-up for six months following closing. In the first year following the lock-up, TDR Capital will be prohibited from selling more than 50% of its shares of the combined company.

Morgan Stanley & Co. LLC served as the lead financial advisor to WillScot, Rothschild & Co. served as the financing advisor to WillScot, and Stifel, Nicolaus & Co., Inc. served as the financial advisors to the special committee of WillScot's Board of Directors. BofA Securities Inc., Deutsche Bank Securities Inc., and J.P. Morgan Securities LLC served as additional financial advisors to WillScot. Allen & Overy LLP acted as external legal counsel to WillScot. Barclays Capital Inc. and Goldman Sachs & Co. LLC served as the financial advisors to Mobile Mini, and Davis Polk & Wardwell LLP acted as external legal counsel to Mobile Mini.

### The Flawed Sales Process

34.     The Proxy provides materially misleading or omits material information when describing the background of the Proposed Transaction including the sales process, or lack thereof, that led to it.

35.     As an initial matter the Proxy fails to adequately disclose the specific powers of the "Finance Committee" of the Mobile Mini Board, what its role in the sales process was, whether it could veto any potential strategic transaction.

36.     Additionally, the Proxy does not disclose if any market check was conducted by the Board, the Finance Committee, or any of the Company's financial advisors during the sales process, and if so, what potentially interested third parties were contacted and their responses.

37.     The Proxy also fails to disclose the reasoning behind why the Company required three separate Financial Advisors, one of which, Duff & Phelps, did not provide a fairness opinion.

38.     The proxy fails to disclose the amount of consideration paid to Duff & Phelps for its financial advisory services throughout the sales process.

39.     Additionally, the Proxy is also unclear as to the nature of any specific standstill restrictions arising out of the terms of any of the numerous non-disclosure agreements entered into between Mobile Mini on the one hand and any interested third party, including WillScot, on the other, and if the terms of any included "don't-ask, don't-waive" provisions or standstill provisions in any such agreements, and if so, the specific conditions, if any, under which such provisions would fall away.

40.     Moreover, the Proxy is also unclear as to any differences that may exist between the various non-disclosure agreements entered into between Mobile Mini and any interested third parties.

**The Materially Misleading and/or Incomplete Preliminary Proxy**

41.     On May 6, 2020, the Mobile Mini Board caused to be filed with the SEC a materially misleading and incomplete Proxy that, in violation of federal securities laws, failed to provide the Company's stockholders, including Plaintiff, with material information and/or provides with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

11

*Omissions and/or Material Misrepresentations Concerning the Sales Process Leading Up to the Proposed Transaction*

42.     Specifically, the Proxy fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Proxy fails to disclose:

a.   The nature of any specific standstill restrictions arising out of the terms of any of the non-disclosure agreements entered into between Mobile Mini on the one hand and any interested third party, including WillScot, on the other, and if the terms of any included "don't-ask, don't-waive" provisions or standstill provisions in any such agreements, and if so, the specific conditions, if any, under which such provisions would fall away;

b.   The nature of any differences that exist between the various non-disclosure agreements entered into between Mobile Mini and any interested third parties;

c.   The specific powers of the "Finance Committee" of the Mobile Mini Board, what its role in the sales process was, and whether it could veto any potential strategic transaction;

d.   Whether any market check was conducted by the Board, the Finance Committee, or any of the Company's financial advisors during the sales process, and if so, what potentially interested third parties were contacted and their responses;

e.   The reasoning behind why the Company required three separate Financial Advisors, one of which, Duff & Phelps, did not provide a fairness opinion;

12

f.   The amount of consideration paid to Duff & Phelps for its financial advisory services throughout the sales process, and whether any consideration is still owed to them.

*Omissions and/or Material Misrepresentations Concerning Mobile Mini's Financial Projections*

43.   The Proxy fails to provide material information concerning financial projections provided by Mobile Mini's management and relied upon by the various financial advisors in their analyses.  Accordingly, the Proxy should have, but fails to, provide certain information in the projections that Mobile Mini management provided to its and WillScot's financial advisors. Courts have uniformly stated that "projections . . . are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-03 (Del. Ch. 2007).

44.   With respect to projections for Mobile Mini and WillScot provided by Mobile Mini, the Proxy fails to disclose all line items used to calculate (a) Adjusted EBITDA, (b) Adjusted EBIT, (c) Unlevered Free Cash Flows calculated by Barclays; and (d) Unlevered Free Cash Flows calculated by Goldman Sachs.

45.   The Proxy also fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

46.   This information is necessary to provide Company stockholders, including Plaintiff, a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

13

47.     Without accurate projection data presented in the Preliminary Proxy, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the various financial analyses in the Proxy, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning WillScot's Financial Projections*

48.     The Proxy fails to provide material information concerning financial projections provided by WillScot's management and relied upon by the various financial advisors in their analyses.  Accordingly, the Proxy should have, but fails to, provide certain information in the projections that WillScot's management provided to its and Mobile Mini's financial advisors. Courts have uniformly stated that "projections . . . are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-03 (Del. Ch. 2007).

49.     With respect to projections for Mobile Mini and WillScot provided by WillScot, the Proxy fails to disclose all line items used to calculate (a) Adjusted EBITDA, (b) Adjusted EBIT, (c) Unlevered Free Cash Flows calculated by Morgan Stanley; (d) Unlevered Free Cash Flows calculated by Stifel; and (e) Estimated Tax Savings from Net Operating Losses.

50.     The Proxy also fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

51.     This information is necessary to provide Company stockholders, including Plaintiff, a complete and accurate picture of the sales process and its fairness.  Without this

information, Plaintiff is not fully informed as to defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

52.     Without accurate projection data presented in the Preliminary Proxy, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the various financial analyses in the Proxy, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Combined Company's Financial Projections*

53.     The Proxy fails to provide material information concerning financial projections provided by both Mobile Mini and WillScot's management and relied upon by the various financial advisors in their analyses.  Accordingly, the Proxy should have, but fails to, provide certain information in the projections that Mobile Mini and WillScot's management provided to their financial advisors for projection data related to the potential Combined Company.  Courts have uniformly stated that "projections . . . are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-03 (Del. Ch. 2007).

54.     With respect to projections for the Combined Company provided by Mobile Mini and WillScot, the Proxy fails to disclose all line items used to calculate (a) Adjusted EBITDA, (b) Adjusted EBIT, (c) Levered Free Cash Flow; and (d) Unlevered Free Cash Flow.

55.     The Proxy also fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

56.     This information is necessary to provide Company stockholders, including Plaintiff, a complete and accurate picture of the sales process and its fairness.  Without this

15

information, Plaintiff is not fully informed as to defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

57.    Without accurate projection data presented in the Preliminary Proxy, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the various financial analyses in the Proxy, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Barclays*

58.    In the Proxy, Barclays describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinion.

59.    With respect to the *Selected Companies Analysis*, the Proxy fails to disclose the following:

  a.   The specific benchmark multiples for each comparable company.

60.    With respect to the *Selected Precedent Transaction Analysis*, the Proxy fails to disclose the following:

  (a)    The monetary value of each selected transaction;

  (b)    The date on which each selected transaction closed.

61.    With respect to the *Mobile Mini Standalone Discounted Cash Flow Analysis*, the Proxy fails to disclose the following:

(a)     The inputs and assumptions used to calculate the implied perpetuity growth rate of 2.0% - 3.0%;

(b)     The inputs and assumptions used to calculate the discount rate range of 8.5% - 9.5%;

(c)     The terminal values of Mobile Mini;

(d)     The line items used to calculate the Company's projected unlevered free cash flows;

(e)     The net debt of the Mobile Mini;

(f)     The number of fully diluted outstanding shares of Mobile Mini Stock.

62.     With respect to the *Combined Company Discounted Cash Flow Analysis*, the Proxy fails to disclose the following:

(a)     The inputs and assumptions used to calculate the implied perpetuity growth rate of 2.25% - 3.25%;

(b)     The inputs and assumptions used to calculate the discount rate range of 8.5% - 9.5%;

(c)     The terminal values of the Combined Company;

(d)     The line items used to calculate the Combined Company's projected unlevered free cash flows;

(e)     The pro-forma net debt of the Mobile Mini;

(f)     The expected phased-in cost synergies in each applicable year and costs of achieving such synergies; and

(g)     The estimated number of fully diluted outstanding shares of Combined Company common stock.

63.     With respect to *Mobile Mini Standalone Present Value of Future Share Price Analysis*, the Proxy fails to disclose the following:

(a)     The inputs and assumptions used to calculate the EV/NTM Adj. EBITDA rate range of 9.0x – 11.5x to apply to the next twelve months' Adjusted EBITDA of Mobile Mini; and

(b)     The inputs and assumptions used to calculate the discount rate of 12.4%.

64.     With respect to *Combined Company Present Value of Future Share Price Analysis*, the Proxy fails to disclose the following:

(a)     The inputs and assumptions used to calculate the EV/NTM Adj. EBITDA rate range of 8.5x – 11.0x to apply to the next twelve months' Adjusted EBITDA of the Combined Company.

(b)     The inputs and assumptions used to calculate the discount rate of 11.4%

65.     These disclosures are critical for stockholders, including Plaintiff, to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

<u>*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Goldman Sachs*</u>

66.     In the Proxy, Goldman Sachs describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinion.

67.     With respect to the *Mobile Mini Standalone Discounted Cash Flow Analysis*, the Proxy fails to disclose the following:

(a)     The inputs and assumptions used to calculate the implied perpetuity growth rate of 1.0% - 2.0%;

(b)     The inputs and assumptions used to calculate the discount rate range of 6.5% - 7.5%;

(c)     The illustrative terminal values range of Mobile Mini;

(d)     The line items used to calculate the Company's projected unlevered free cash flows;

(e)     The net debt of the Mobile Mini;

(f)     The number of fully diluted outstanding shares of Mobile Mini Stock.

68.     With respect to the *Combined Company Discounted Cash Flow Analysis*, the Proxy fails to disclose the following:

(a)     The inputs and assumptions used to calculate the implied perpetuity growth rate of 1.25% - 2.25%;

(b)     The inputs and assumptions used to calculate the discount rate range of 6.75% - 7.75%;

(c)     The illustrative terminal values range of the Combined Company;

(d)     The pro-forma net debt of the Combined Company;

(e)     The estimated number of fully diluted outstanding shares of WillScot common stock following the consummation of the merger.

69.     With respect to *Mobile Mini Standalone Present Value of Future Share Price Analysis*, the Proxy fails to disclose the following:

(a)     The basis used to calculate the EV/NTM Adj. EBITDA rate range of 9.0x – 11.5x to apply to the next twelve months' Adjusted EBITDA of the Mobile Mini; and

19

(b)    The inputs and assumptions used to calculate the discount rate of 8.0%.

70.    With respect to *Pro Forma Present Value to be Received per Share of Mobile Mini Analysis*, the Proxy fails to disclose the following:

(a)    The basis used to apply the EV/NTM Adj. EBITDA rate range of 8.5x – 11.0x to apply to the next twelve months' Adjusted EBITDA of the Combined Company.

(b)    The inputs and assumptions used to calculate the discount rate of 9.0%

71.    With respect to the *Selected Transactions Multiples Analysis*, the Proxy fails to disclose the following:

(a)    The monetary value of each selected transaction;

(b)    The date on which each selected transaction closed.

72.    These disclosures are critical for stockholders, including Plaintiff, to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Morgan Stanley*

73.    In the Proxy, Morgan Stanley describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinion.

74.    With respect to the *WillScot Discounted Cash Flow Analysis*, the Proxy fails to disclose the following:

(a)    The inputs and assumptions used to calculate the implied perpetuity growth rate of 2.5%;

20

        (b)      The inputs and assumptions used to calculate the discount rate range of 6.1% - 7.4%;

        (c)      The terminal values range of WillScot;

        (d)      The line items used to calculate WillScot's unlevered free cash flows;

        (e)      The net operating losses of WillScot;

        (f)      The net debt of WillScot.

75. With respect to the *Mobile Mini Discounted Cash Flow Analysis*, the Proxy fails to disclose the following:

        (a)      The inputs and assumptions used to calculate the implied perpetuity growth rate of 2.5%;

        (b)      The inputs and assumptions used to calculate the discount rate range of 5.1% - 6.4%;

        (c)      The terminal values range of Mobile Mini;

        (d)      The line items used to calculate Mobile Mini's unlevered free cash flows;

        (e)      The net operating losses of Mobile Mini;

        (f)      The net debt of Mobile Mini.

76. With respect to the *WillScot Discounted Equity Value – based on aggregate value to EBITDA Multiple Analysis*, the Proxy fails to disclose the following:

        (a)      The inputs and assumptions used to calculate the aggregate value to EBITDA multiple range of 7.1x – 9.1x;

        (b)      WillScot's estimated net debt as of December 31, 2021;

        (c)      The inputs and assumptions used to calculate the discount rate of 8.5%;

77.     With respect to the *Mobile Mini Discounted Equity Value – based on aggregate value to EBITDA Multiple Analysis*, the Proxy fails to disclose the following:

(a)     The inputs and assumptions used to calculate the aggregate value to EBITDA multiple range of 8.8x – 10.8x;

(b)     Mobile Mini's estimated net debt as of December 31, 2021;

(c)     The inputs and assumptions used to calculate the discount rate of 7.1%

78.     With respect to the *WillScot Discounted Equity Value – based on aggregate value to EBITDA net of capital expenditures multiple Analysis*, the Proxy fails to disclose the following:

(a)     The inputs and assumptions used to calculate the aggregate value to EBITDA multiple range of 11.5x – 13.5x;

(b)     WillScot's estimated net debt as of December 31, 2021;

(c)     The inputs and assumptions used to calculate the discount rate of 8.5%;

79.     With respect to the *Mobile Mini Discounted Equity Value – based on aggregate value to EBITDA net of capital expenditures multiple Analysis*, the Proxy fails to disclose the following:

(a)     The inputs and assumptions used to calculate the aggregate value to EBITDA multiple range of 11.7x – 13.7x;

(b)     Mobile Mini's estimated net debt as of December 31, 2021;

(c)     The inputs and assumptions used to calculate the discount rate of 7.1%;

80.     With respect to the *Precedent Premia Analysis*, the Proxy fails to disclose the following:

(a)     The monetary value of each selected transaction;

(b)     The date on which each selected transaction closed.

81.     These disclosures are critical for stockholders, including Plaintiff, to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Stifel*

82.     In the Proxy, Stifel describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinion.

83.     With respect to the *Mobile Mini Selected Companies Analysis*, the Proxy fails to disclose the following:

       (a)     The specific benchmark multiples for each comparable company.

84.     With respect to the *Mobile Mini Selected Precedent Transactions Analysis*, the Proxy fails to disclose the following:

       (a)     The specific benchmark multiples for each selected transaction.

       (b)     The monetary value of each selected transaction;

       (c)     The date on which each selected transaction closed.

85.     With respect to the *Mobile Mini Discounted Cash Flow Analysis*, the Proxy fails to disclose the following:

       (a)     The inputs and assumptions used to calculate the range of exit multiples relevant to Mobile Mini's estimated 2024 EBITDA of 9.5x to 10.5x;

       (b)     The inputs and assumptions used to calculate the perpetuity growth rate range of 1.75% - 2.25%;

(c)      The inputs and assumptions used to calculate the discount rate range of 8.7% -9.7%;

(d)      The line items used to calculate Mobile Mini's unlevered free cash flows;

(e)      Mobile Mini's weighted average cost of capital.

86.      With respect to the *Mobile Mini Discounted Cash Flow Analysis*, the Proxy fails to disclose the following:

(a)      The inputs and assumptions used to calculate the implied perpetuity growth rate of 2.5%;

(b)      The inputs and assumptions used to calculate the discount rate range of 5.1% - 6.4%;

(c)      The terminal values range of Mobile Mini;

(d)      The line items used to calculate Mobile Mini's unlevered free cash flows;

(e)      The net operating losses of Mobile Mini;

(f)      The net debt of Mobile Mini.

87.      With respect to the *WillScot Selected Companies Analysis*, the Proxy fails to disclose the following:

(a)      The specific benchmark multiples for each comparable company.

88.      With respect to the *WillScot Discounted Cash Flow Analysis*, the Proxy fails to disclose the following:

(a)      The inputs and assumptions used to calculate the range of exit multiples relevant to WillScot's estimated 2024 EBITDA of 9.5x to 10.5x;

(b)      The inputs and assumptions used to calculate the perpetuity growth rate range of 1.75% - 2.25%;

(c)     The inputs and assumptions used to calculate the discount rate range of 7.7% -8.7%;

(d)     The line items used to calculate WillScot's unlevered free cash flows;

(e)     WillScot's weighted average cost of capital.

89.     These disclosures are critical for stockholders, including Plaintiff, to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

90.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration is in its best interests. Without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act
### Against All Defendants

91.     Plaintiff repeats all previous allegations as if set forth in full herein.

92.     Defendants have disseminated the Proxy with the intention of soliciting stockholders, including Plaintiff, to vote their shares in favor of the Proposed Transaction.

93.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

94.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

95.     The Proxy was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

96.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

97.     The Individual Defendants were at least negligent in filing a Proxy that was materially misleading and/or omitted material facts necessary to make the Proxy not misleading.

98.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, and Plaintiff will be deprived of its entitlement to decide whether to vote their shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**
**Against The Individual Defendants**

99.     Plaintiff repeats all previous allegations as if set forth in full herein.

100.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy was materially misleading to Company stockholders.

101.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Proxy.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

102.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Mobile Mini's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Proxy was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Proxy and are therefore responsible and liable for the misrepresentations contained herein.

103.    The Individual Defendants acted as controlling persons of Mobile Mini within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Mobile Mini to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Mobile Mini and all of its employees.  As alleged above, Mobile Mini is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief, in its favor, and against the Defendants, as follows:

A.    Preliminarily and permanently enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction on the terms presently contemplated;

B.    To the extent the Proposed Transaction is consummated before entry of this Court's judgment, rescinding it and setting it aside or awarding rescissory damages;

C.    Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees and expenses; and

E.    Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.


Dated: May 8, 2020                              **BRODSKY & SMITH, LLC**

*Evan J. Smith*

Evan J. Smith
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com


*Attorneys for Plaintiff*